Matter of Fauntleroy v Kelly (2004 NY Slip Op 50875(U))

[*1]

Matter of Fauntleroy v Kelly

2004 NY Slip Op 50875(U)

Decided on August 12, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 12, 2004

Supreme Court, New York County
In the Matter of the Denial of Pistol License Application of Michael Fauntleroy, Petitioner, For a Judgment under Article 78 of the Civil Practice Law and Rules Granting Petitioner a Pistol License,
against
RAYMOND KELLY, as Statutorily Designated Handgun Licensing Officer, and the Police Commissioner of the City of New York and His Successors in Office, Respondent.
105213/04

Herman Cahn, J.
Petitioner, Michael Fauntleroy brings this proceeding, pursuant to CPLR Article 78, seeking to annul respondent Police Commissioner's determination disapproving Fauntleroy's application for a handgun license. Respondent cross-moves to dismiss on the ground that the proceeding is barred by collateral estoppel, CPLR 3211 (a) (5).
Petitioner is a 48 year old married man, who owns a home, and has been gainfully employed as the Director of Telecommunications for Interfaith Medical Center in Brooklyn for nine years. He previously had a premises pistol and a Rifle/Shotgun Permit issued by the Police Commissioner.
On the night of July 31, 1996, two police officers responded to a 911 call of a burglary in progress at Brooklyn Avenue and 35th Street. They spotted a man opening a garage at 517 E. 35th Street, petitioner's home, walked toward the burglar, and told him not to move. Instead, the man ran away climbing over a fence. The fleeing suspect was apprehended and arrested by another police officer.
The officers knocked on petitioner's door, 517 E. 35th Street. Petitioner told them that he had seen a man trying to break into his basement [FN1] and then entering his garage. Believing that he and his family were in danger, petitioner fired several shots from his licensed .22 caliber rifle, from a second story window, in order to scare away the intruder (who turned out to be unarmed). He aimed at the base of a large tree on his property so as not to hit anyone. Petitioner displayed his permit and rifle to the police officers. He was thereupon arrested for reckless endangerment. The intruder was [*2]charged with burglary. The charges against petitioner were eventually dismissed. The intruder was convicted of burglary.
At the time of the incident, petitioner had a Rifle/Shotgun Permit for about 15 years, and a premises pistol permit for about two years, without incident. He had never been otherwise arrested. The Police Department License Division revoked both of petitioner's firearms licenses. An investigation was conducted by the Police Department, and the investigating officer offered, in writing, to waive a hearing if petitioner agreed to a penalty of a six month suspension (from the date of the incident) of his firearms licenses, followed by one year probation. After January 31, 1997, petitioner would be allowed to set a date to come in and again obtain his license. Petitioner, who was represented by counsel, declined the offer and exercised his right to a hearing.
A hearing was held on April 15, 1997. By written decision, dated August 11, 1997, the hearing officer reported that, after the incident, petitioner realized that he should not have fired his rifle, but that he did not have much time to contemplate his actions, since he had been awakened by the burglar's breaking into his home and he was trying to protect his family. The hearing officer further reported that he believed petitioner would act properly in the future. Therefore, the hearing officer recommended that petitioner should be given a chance to continue his firearms licenses.
By decision dated September 22, 1997, the Commanding Officer of the License Division revoked petitioner's license because "Licensee fired his rifle outside his window at a fleeing felon."
 Petitioner did not appeal or challenge the 1997 revocation. Instead, he filed a new application for a handgun permit on August 14, 1998. That application was disapproved on May 3, 1999, based on the 1997 revocation. Petitioner commenced an Article 78 proceeding in this court. By decision and order entered January 24, 2000, this court (Walter Tolub, J.) affirmed respondent's May 1999 determination and dismissed the petition. Justice Tolub's decision was affirmed by the Appellate Division, First Department (Matter of Fauntleroy v Safir, 283 AD2d 211 [1st Dept 2001]), which held:
It was not arbitrary and capricious for respondent to rely on his prior, judicially unchallenged determination, made after a hearing, revoking petitioner's previous pistol license less than two years before. The prior determination provides a rational basis for finding that good cause exists to deny petitioner a license. (Underlining added.)
Petitioner thereafter filed a new application in February 2003. It was disapproved, by written notice dated October 28, 2003, for the following reasons: "Due to the revocation of your pistol license, you are prohibit [sic] to possess a firearm as per Penal Law section 400 (1)(e) [sic], 400.00 (1)(e)." Petitioner's administrative appeals were denied. A final determination by respondent was dated December 5, 2003.
Petitioner now contends that respondent's disapproval of his most recent pistol license application was arbitrary and capricious and an abuse of discretion and was affected by error of law (CPLR 7803 [3]).
The Police Commissioner has the authority, and the discretion, to grant licenses for the possession or carrying of firearms within New York City, pursuant to Title 10, Chapter 1, § 10-131 of the Administrative Code of the City of New York (see Sewell v City of New York, 182 AD2d 469 [1st Dept], appeal denied, 80 NY2d 756 [1992]). Possession of a firearms license is a privilege, not a right (ibid., 182 AD2d at 472).
[*3]
The law is well settled that the scope of judicial review of an administrative decision such as the one at bar is limited to ascertaining whether it is rationally based, or whether the determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion (Matter of Pell v Board of Educ., 34 NY2d 222, 230 [1974]). The issue is whether the determination was reasonable, not whether the facts upon which the determination was based were true and accurate (id). Moreover, even though the court may have reached a different conclusion, it may not substitute its judgment for that of the administrative agency unless the determination was not supported by the record and had no rational basis (Matter of Cale Dev. Co. v Conciliation & Appeals Bd., 94 AD2d 229 [1st Dept 1983], affd 61 NY2d 976 [1984]; Matter of Sullivan County Harness Racing Assn. v Glasser, 30 NY2d 269, 278 [1972]). 
An application for a renewal is treated in the same manner as an application for a new license, and the inquiry of the court is limited to a determination of whether the record discloses circumstances which leave no possible scope for the reasonable exercise of that discretion (Matter of Stracquadanio v Department of Health of City of New York, 285 NY 93, 95-96 [1941]; Matter of Wager v State Liquor Auth., 4 NY2d 465, 468 [1958]).
However, in an Article 78 proceeding, the reviewing court is not expected to act as a mere rubber stamp, but, rather, exercises a genuine judicial function and does not confirm a determination simply because it was rendered by an administrative agency (see 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 181 [1978]).
Here, the record shows that the sole basis for denial of petitioner's 2003 pistol license application was that Respondent felt that Penal Law § 400.00 (1) (e) mandated such result because of the prior revocation of his pistol license. However, Penal Law § 400.00 (1) (e) provides in part, as follows:
§ 400.00. Licenses to carry, possess, repair and dispose of firearms.
1. Eligibility. . . . No license shall be issued or renewed except for an applicant (a) twenty-one years of age or older ...; (b) of good moral character; (c) who has not been convicted anywhere of a felony or a serious offense; (d) who has stated whether he or she has ever suffered any mental illness or been confined to any hospital or institution, public or private, for mental illness; (e) who has not had a license revoked or who is not under a suspension or ineligibility order issued pursuant to the provisions of section 530.14 of the criminal procedure law or section eight hundred forty-two-a of the family court act ... [emphasis added].
The provision does not, contrary to the position apparently taken by respondent in denying petitioner's most recent application, make any prior revocation of a pistol permit for any reason whatsoever an automatic bar to the issuance of a permit, but, rather only makes such a bar mandatory where the prior revocation was due to the issuance of a temporary or permanent order of protection pursuant to Criminal Procedure Law § 530.14 or Family Court Act § 842-a. It is clear that the lifetime revocation of firearms license privileges referred to in Penal Law § 400.00 (1) (e) applies only to a person who has had a license revoked because of the issuance of a temporary or permanent order of protection to protect against acts of domestic violence. It is undisputed that no such order of protection was ever sought, let alone issued, against petitioner.
Therefore, respondent's determination was affected by an error of law (CPLR 7803 [3]).
Respondent argues, in the cross motion to dismiss, that this proceeding is barred by collateral [*4]estoppel because of the determination rendered in the prior Article 78 proceeding.
 In order to invoke the doctrine of collateral estoppel two basic elements are required: (1) that the identical issue was necessarily decided in the prior proceeding and is decisive of the present action, and (2) that there was a full and fair opportunity to contest that issue in the prior proceeding (D'Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 664 [1990]). The burden of establishing identity of issue necessarily decided in a prior action is on the party seeking to impose collateral estoppel; the burden of establishing a denial of a full and fair opportunity to contest the decision said to be controlling is on the opponent (Forcino v Miele, 122 AD2d 191, 193 [2d Dept 1986]). The doctrine of collateral estoppel does not apply to bar a pure question of law (American Home Assur. Co. v International Ins. Co., 90 NY2d 433, 440 [1997]; Avon Dev. Ents.Corp. v Samnick, 286 AD2d 581 [1st Dept 2001]).
Since the denial of petitioner's present application involves a pure question of statutory interpretation, the cross motion to dismiss the proceeding based upon the collateral estoppel doctrine is denied.
The court notes that it has now been seven years since petitioner's earlier permit was revoked. Nothing has been submitted to question petitioner's good conduct or good character in the intervening seven years. This factor should be taken into account in the reconsideration of the application. If this factor is not considered, then respondent is effectively arguing that every revocation is a permanent revocation. The court has not been cited to any such rule.
Accordingly, it is hereby
ORDERED that the cross motion to dismiss is denied; and it is further
ORDERED and ADJUDGED that the petition is granted to the extent of remanding the matter to respondent to reconsider whether to grant petitioner's application for the issuance of a premises license, within sixty (60) days after service of a copy of this judgment with notice of entry.
Dated: August 12, 2004
ENTER:
_______/S/_____________
 J.S.C.
Footnotes

Footnote 1: The intruder had actually entered the basement of petitioner's home.